IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **02-cv-00851-JLK**

**KAREN McBETH**,

       Plaintiff,

v.

**TERRY L. SANTI, individually and in her capacity as a Dept. of Human Services Employee; KATHI WAGONER, individually and in her capacity as a Dept. of Human Services Employee; and JEFFREY HIMES, individually and as an investigator and deputy sheriff of the Arapahoe County Sheriff's Office** ,

       Defendants.

_____

ORDER ON DEFENDANTS' MOTIONS (Docs. 20, 44)
FOR SUMMARY JUDGMENT
_____

KANE, J.

Upon review of the pending Motions for Summary Judgment of Defendant Himes (filed 9/6/02, Doc. 20) and of Defendants Santi and Wagoner (filed 12/26/02, Doc. 44), I issue the following rulings:

1.    <u>Operative Facts and Claims for Relief</u>.  The Complaint in this case arises out of the termination of Plaintiff Karen McBeth's day care license on June 26, 2001.  McBeth claims Defendants –  Arapahoe County Deputy Sheriff Jeffrey Himes and Colorado Department of Human Services employees Terri Santi and Kathy Wagoner – unlawfully and unconstitutionally took, or attempted to take, her child care license by intimidating her into relinquishing it pending an investigation of sexual assaults allegedly perpetrated

by McBeth's adult son on his minor daughter and his daughter's friend at McBeth's home on June 23, 2001. McBeth's home provided the situs for her day care services. The criminal investigation was assigned by the Arapahoe County Sheriff's Office to Defendant Himes. Himes's complaint triggered Santi and Wagoner's investigation on behalf of the Colorado Department of Human Services Division of Childcare licensing authority.

As part of the criminal investigation, Himes on June 25, 2001 asked Ms. McBeth to produce all records pertaining to children then currently in her care and their parents. Himes expanded the request the following day to include "all records pertaining to all children in [McBeth's] care since 1995." Ms. McBeth voluntarily complied with the first request, but declined to provide the records sought in the expanded request because "she had contacted an attorney who had advised her that she did not have to produce those records without a Court Order." Pl.'s Resp. Himes Mot. Summ. J. at 2 (Statement of Undisputed Material Facts, ¶ 10). Himes obtained a search warrant for the records later that same day, executing it at Plaintiff's address. Citing McBeth's "refusal to cooperate" with his investigation, Himes lodged a complaint with the Division of Childcare, launching Wagoner and Santi into action. The Division of Childcare's intake form stated the nature of the licensing complaint as follows:

> Provider's son Steven Forsyth was arrested on June 24, 2001 for sexual assault on his child and another child in care. Steven has lived in the home since 1995. The provider is uncooperative with authorities by [not] providing names and telephone numbers of all children in care since she became

licensed.

Childcare Facility - Complaint Tracking System (Attached as Ex. 3 to Pl.'s Resp. Santi & Wagoner Mot. Summ. J.) at 1.

Pursuant to this complaint and before Himes arrived to execute the search warrant, Wagoner contacted McBeth to "advise [her] that refusal to cooperate with the investigation could cause a summary suspension of her license." Complaint Tracking System (Attachment 3) at 3. At Santi's suggestion, Wagoner also informed McBeth that in the alternative, she could voluntarily relinquish her license, which would allow her to reapply for it earlier than she might if the license were involuntarily suspended. McBeth chose to surrender her license, but claims she did so unwillingly and only as a result of the intimidation and coercion of Defendants Wagoner and Santi.

It is the events of June 26, 2001, that form the basis for McBeth's claims against Defendants Himes, Santi and Wagoner. Viewing the facts in the light most favorable to Ms. McBeth,[1] both Himes in the context of his criminal investigation of Steven Forsyth and Santi and Wagoner in their roles as investigators with the state licensing authorities premised their actions on June 26th as being occasioned by McBeth's "refusal to

---

[1] Under applicable summary judgment standards, I view facts in the record and draw reasonable inferences from them in the light most favorable to the nonmoving party. *See Simms v. Oklahoma ex rel. Dep't Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

3

cooperate" in turning over certain of her day care records. McBeth denies she refused to cooperate, saying she voluntarily turned over her records of children currently enrolled in the daycare and told Himes she would turn over records of children formerly enrolled as soon as Himes secured a warrant. Even though she voluntarily turned over the records of her current clients, McBeth contends Himes had no basis for linking the assaults to any child in her care, as he knew that Forsyth's arrest related to events that occurred on a Sunday, when no child care was offered in the home, and knew the alleged victims were Forsyth's daughter and a friend who was visiting the home that day. McBeth asserts in conclusory fashion that the "Defendants," collectively, deprived her of her rights under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

McBeth filed suit, seeking injunctive relief in the form of the reinstatement of her daycare license as well as damages for the alleged deprivation of her civil rights under 42 U.S.C. § 1983 and for conspiracy under 42 U.S.C. § 1985. Within two months of filing suit, McBeth applied for and received a new daycare license and has therefore withdrawn her request for injunctive relief. Her conspiracy claim was previously dismissed by the court. Accordingly, the only claims that remain are those seeking damages for Defendants' various deprivations of McBeth's Fourth, Sixth and Fourteenth Amendment rights.[2] Defendants move for summary judgment, arguing both that McBeth fails to

---

[2] McBeth spends considerable time attempting to articulate a claim for relief under § 1983 against Santi and Wagoner based on their "violations" of various state statutory provisions governing home child care and child care licensing procedures. *See* Resp. Santi/Wagoner Mot. Summ. J. at 10-14 (asserting Defendants Santi and Wagoner disregarded McBeth's clearly

4

Case 1:02-cv-00851-PAB-MJW   Document 64   Filed 01/29/07   USDC Colorado   Page 5 of 14

establish any cognizable constitutional deprivations and, even if she did, that they are shielded from suit based on the defense of qualified immunity. I agree in part, and GRANT the Motion of Defendants Santi and Wagoner as to each of McBeth's claims against them and GRANT Himes's Motion with respect to McBeth's claims premised on violations of her Fourth and Fourteenth Amendment rights under the Constitution. As for McBeth's claim that Himes violated her Sixth Amendment right to counsel, I analyze that claim under the First Amendment and find McBeth's assertion that Himes retaliated against her for seeking the advice of counsel before turning over the second set of documents requested sufficiently supported in the record to survive summary judgment. Because I disagree the record supports no inference other than that a reasonable officer in his position would have understood his actions to have been lawful, rather than unlawful, I also reject Himes's defense of qualified immunity, and will allow this claim to proceed to trial.

2.    Applicable Legal Standard.  Section 1983 imposes civil liability only upon

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

---

established rights under C.R.S. §§ 26-6-108 and 24-4-105 in taking Plaintiff's child care license). Section 1983 provides redress for deprivations of rights secured by *federal*, not state, law, however, and to the extent McBeth purports to state a claim based solely on Defendants' taking of her license "in violation of [the Department of Human Service]'s own policies and procedures" and in contravention of state due process rights, that claim is DISMISSED. My review is solely of McBeth's assertion that Defendants' actions deprived her of her federal constitutional rights. *See* 42 U.S.C. § 1983 (limiting liability to those who deprive others of any rights, privileges, or immunities secured by the "Constitution and laws" of the United States).

> deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right "secured by the Constitution and laws" of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979), *applied in Graham v. Independent School Dist. No. I-89*, 22 F.3d 991, 993 (10th Cir. 1994). This is especially true where, as here, the defense of qualified immunity has been raised.

Qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, __, 121 S.Ct. 2151, 2156 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). The privilege is "'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Anderson*). As a result,

> [a] court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.

*Id.* at 2156 (applying Fed. R. Civ. P. 12(b)(6) standard to defense raised on a motion to dismiss). If no constitutional right would be violated even if the allegations were proven, then there is no necessity for further inquiries concerning qualified immunity. *Id.* If a violation could be established on a favorable view of the parties' submissions, however, then I must proceed to "ask whether the right was clearly established . . . . [i]n light of the

specific context of the case." *Id.* The dispositive inquiry in determining whether a right is clearly established "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id. See Malik v. Arapahoe County Dept. Social Servs.*, 987 F. Supp. 868, 873 (D. Colo. 1997)(Kane, J.)(applying standard in action based on officers' conduct in child abuse investigation).

3. <u>Sixth Amendment deprivations</u>. Ms. McBeth contends it is clearly established under the Sixth Amendment to the United States Constitution that "a person has the right to seek legal advice when confronted with a request for materials or documents from a law enforcement official . . . and that the imposition of sanctions or other punitive measures upon an individual exercising such rights" constitutes a violation thereof. Pl.'s Resp. to Santi/Wagoner Mot. Summ. J. at 15. McBeth relies on *DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990), to support her claim that Himes's actions in securing the warrant and making a complaint to the child care licensing authorities, and Santi and Wagoner's actions in threatening summary suspension of her license and intimidating her into "voluntarily" surrendering it, violated her Sixth Amendment right to counsel.

While McBeth articulates her claim in terms of the Sixth Amendment, it is clear from her argument and her invocation of *DeLoach* that her claim is actually founded on the First Amendment and its guarantees regarding freedom of association and speech.[3]

---

[3] Ms. McBeth provides no authority for her assertion that Himes's request for documents in his criminal investigation of Steven Forsyth implicated her Sixth Amendment right counsel, and I decline to search for any. Here, where the criminal investigation was of Ms. McBeth's son, not Ms. McBeth, and where she was never targeted, investigated, arrested,

7

The plaintiff in *DeLoach* was a suspect in a murder investigation and alleged she was ultimately arrested in that case in retaliation for her decision to hire an attorney. Leaving aside a dispute regarding whether DeLoach's Sixth Amendment rights were triggered by the investigation, Judge Logan analyzed DeLoach's claim in terms of her First Amendment rights of association and free speech. *Id.*, 922 F.2d at 620 (the right to retain and consult with an attorney when one is the target of a criminal investigation implicates not only the Sixth Amendment but also clearly established First Amendment rights of association and free speech). Judge Logan found defendant's actions in omitting exculpatory facts from her affidavit in support of the arrest warrant gave rise to an inference that defendant had worked to cause DeLoach's arrest at least partly in retaliation for her decision to hire an attorney. *Id.* Because Ms. McBeth was never the target of a criminal investigation and faced no risk of arrest, I treat Ms. McBeth's claim that she was retaliated against for consulting an attorney as a claim brought under the First Amendment, and DISMISS any claim premised on the alleged deprivation of her Sixth Amendment right to counsel.

Unfortunately, the parties' arguments on the question of retaliation are limited to jejune and conclusory assertions that Defendants' actions did or did not violate McBeth's

---

threatened with arrest, or charged with a crime, it is doubtful those rights were triggered. I do not reach the question, however, as Ms. McBeth's allegations regarding the retaliatory nature of Defendants' actions are more accurately understood as raising First Amendment concerns. *See Malik*, 987 F. Supp. at 880, n.5 (citing *DeLoach* and declining to reach Sixth Amendment deprivation claim).

Sixth Amendment rights. Based on the record before me, however, I conclude Himes's complaint to the Division of Child Care that McBeth was "refusing to cooperate" in his investigation supports an inference that Himes was angry and wanted the Division to launch a negative licensing action against McBeth based on her exercise of her right to consult with counsel before handing over the documents Himes sought without a warrant. I reject, however, the contention that Himes's actions in seeking the warrant by itself constituted unlawful retaliation under the First Amendment, and DISMISS any § 1983 claim premised on that act alone.

As for Defendants Santi and Wagoner, the record does not support a claim for retaliation. The only facts in the record are that Santi and Wagoner were told McBeth was refusing to cooperate with a criminal investigation of an assault that involved a "child in care at [her] home" by providing "names and telephone numbers of all children in care since she became licensed." Complaint Tracking Document (Attachment 3 to Pl.'s Mot. Summ. J.) at p. 1. There is no evidence that Santi or Wagoner knew the investigation related to McBeth's granddaughter and a friend and not, at that point, of any child in McBeth's care under her license, and no evidence that Santi or Wagoner knew that all McBeth had done at that point was to ask for a warrant before releasing the information. Most importantly, there is no evidence Santi or Wagoner had any knowledge that McBeth had conferred with or consulted with counsel. On these facts, I hold no reasonable juror could find the acts of Santi or Wagoner in convincing or coercing McBeth to surrender her license or face summary suspension of her license for failing to cooperate with the

9

police were done in retaliation for McBeth's exercise of her First Amendment rights to consult with counsel. Accordingly, McBeth's § 1983 claims against Santi and Wagoner for deprivation of her Sixth (*viz.* First) Amendment rights are DISMISSED.

My conclusion that McBeth's First Amendment claim against Himes survives summary judgment leads me to the second prong of the qualified immunity analysis, namely, that Himes is nevertheless immune from suit unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at __, 121 S.Ct. at 2156. I conclude it would have been clear to a police officer, faced with a situation in which an individual in the possession of records setting forth the names and addresses of minor children and their families says she has sought the advice of counsel and will provide them to you only if you return with a warrant, that the individual was acting within her rights under the First Amendment and is not "failing to cooperate" with police as would warrant punitive action by state licensing authorities. *Accord Malik*, 987 F. Supp. at 881. Should a jury ultimately agree that Himes was acting not in retaliation for Ms. McBeth's "refusal to cooperate" but based on a need for speed or some other nonretaliatory motivation, then McBeth's claim will fail on its merits. Officer Himes does not, on the state of this record, enjoy immunity from suit to find out. Himes's Motion for Summary Judgment on McBeth's claim against him for deprivation of her Sixth (*viz.* First) Amendment right to seek and act on the advice of counsel is DENIED.

3. <u>Fourth Amendment</u>. While Ms. McBeth asserts a claim for deprivation of her

Fourth Amendment rights against Defendants collectively, it is clear the claim is directed to Officer Himes only.[4]  The gist of Ms. McBeth's argument is that Himes violated her Fourth Amendment Rights by obtaining a search warrant for her day care center records when there was no factual basis for a concern that any child in her care as a licensed day care provider had been assaulted.  Absent such a factual basis, Ms. McBeth contends there was no probable cause for the warrant and the search of her records was objectively unreasonable.

Ms. McBeth's argument hinges on the fact that the assaults being investigated were alleged to have occurred on a day in which the day care center was not open, such that "[i]nvestigating the circumstances of Plaintiff's day care clients has nothing to do with investigating the allegations that these two specific adolescent victims had been assaulted by her son." Pl.'s Response to Himes Mot. Summ. J. (Doc. * ) at 9.  Gaps in logic aside,[5] the question is whether and under what circumstances disputes as to the existence of probable cause may rise to the level of a Fourth Amendment violation.

---

[4]  In her Response to Defendant Santi and Wagoner's Motion for Summary Judgment, for example, Ms. McBeth simply quotes the text of the Fourth Amendment's protection against unreasonable searches and seizures and concludes "Plaintiff had a clearly established constitutional right based on the Fourth Amendment when she believed that it was unreasonable for Defendant Himes to request the materials concerning her former child care clients [and] to insist that he seek a warrant based upon probable cause." Response (Doc. *) at 15. McBeth offers no fact or legal theory of relief against either Santi or Wagoner in support of any Fourth Amendment claim against them, and I find none exists.

[5]  To the extent Steven Forsyth lived in the residence or spent any time there other than on the day on which the alleged assaults occurred, it seems obvious that the identities of other children who may have come into contact with him there would be relevant and the proper subject of any investigation into those assaults.

11

McBeth relies on *Malley v. Briggs*, 475 U.S. 335 (1986) to argue Himes's actions in executing the search warrant of her records in the absence of facts connecting the assaults for which Steven Forsyth was charged with any of her day care children were objectively unreasonable and violated her Fourth Amendment rights.  McBeth's analysis conflates a lack of probable cause – which, for purposes of the motion for summary judgment only, I will assume was lacking – with the objective unreasonableness of Himes's belief that it did as would be necessary to divest him of qualified immunity for his actions in executing the warrant under *Anderson*.  This is improper.  As the Supreme Court held in *Malley,* "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [citation omitted] will the shield of immunity be lost."  475 U.S. 344-45.  Even assuming, for the sake of argument, that Forsyth's presence in McBeth's house over a period of time before the alleged assaults occurred did not consitute probable cause to search McBeth's day care records for the names of children who may have come into contact with him previously, that fact does not raise the inference necessary to overcome Himes's defense of qualified immunity.  Absent any other fact or testimony tending to demonstrate that a reasonably well-trained officer would have known that the search was illegal despite its authorization by a judicial officer, *Malley* will not support an inference of liability.  *See id.* at 345 (citing *United States v. Leon*, 468 U.S. 897, 922, n, 23 (1984)(articulating standard).  I note McBeth does not contend Himes lied or deliberately withheld exculpatory information from the judicial officer in seeking the warrant. *C.f. DeLoach*, *supra*.

Instead, she cites Himes's "admission" that he lacked information at the time he sought the warrant to say whether or not the two alleged sexual assault victims *were* students at McBeth's day care center is not only conclusive of the lack of probable cause for the warrant, but also deprives Himes of the defense of qualified immunity. *See* Pl.'s Resp. Himes Mot. Summ. J. at 9 (citing ¶ 10 of Himes' Answer). Neither is true. Absent any evidence tending to show Himes knew he lacked probable cause for the warrant sought, Himes's Motion for Summary Judgment as to McBeth's § 1983 claim based on deprivation of her Fourth Amendment rights must also be GRANTED.

4.      <u>Deprivations of Fourteenth Amendment Due Process Rights</u>.  McBeth's Fourteenth Amendment due process claim is premised on the assertion that she received no notice of any "derelictions" with respect to her license and no opportunity to be heard before Santi and Wagoner threatened her with the summary suspension and intimidated her into relinquishing it voluntarily. Pl.'s Response Santi & Wagoner Mot. Summ. J. at 18-19. Given the fact that she did relinquish her license almost immediately after Wagoner contacted her regarding Himes's complaint, there was no time for any formal process to unfold. Because McBeth relinquished her license and no formal suspension proceedings were ever initiated, the facts alleged simply do not fit within the due process rubric. The state did not take Ms. McBeth's license and no suspension proceedings were initiated. Accordingly, Ms. McBeth's due process rights were never triggered and her Fourteenth Amendment claim must be DISMISSED.

Based on the foregoing, IT IS ORDERED THAT the Motion of Defendant Jeffrey Himes for Summary Judgment (Doc. 20) is GRANTED in part and DENIED in part. Himes's Motion is GRANTED as to Plaintiff's claims under 42 U.S.C. § 1983 for deprivations of her Fourth and Fourteenth Amendment rights and DENIED as to Plaintiff's § 1983 claim based on deprivations of her First Amendment rights. The Motion of Defendants Santi and Wagoner for Summary Judgment (Doc. 44) is GRANTED in toto, and judgment shall enter against Plaintiff and in favor of Santi and Wagoner on each of Plaintiff's claims against them.

This case shall proceed on a single claim against Defendant Himes under 42 U.S.C. § 1983 for retaliation based on Plaintiff's exercise of her First Amendment right to seek and follow the advice of counsel and will be set for a pretrial conference by separate Minute Order. Given the circumstances of this case and the relative risks faced by both sides of an adverse verdict, the parties may contact chambers for a referral for settlement should either or both determine this to be in their interest.

Dated January 29, 2007.                           **s/John L. Kane**
                                                  SENIOR U.S. DISTRICT JUDGE